1  KIM H. LUU-NG, SBN 247356
2  BEN LOVEMAN, SBN 249970
   REEVES IMMIGRATION LAW GROUP
3  2 N. Lake Avenue, Suite 950
   Pasadena, CA 91101
4  Tel: (626) 795-6777
   kluung@reevesimmigration.com
5  bloveman@reevesimmigration.com

6  Attorneys for Petitioner

7

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10

11  **SITHY YI,**
                                          Case No.
12                          *Petitioner,*

13        **v.**

14  **FERETI SEMAIA, Facility Administrator,**    **PETITION FOR WRIT OF HABEAS**
    **Adelanto ICE Processing Center, Adelanto,**  **CORPUSAND ORDER TO SHOW CAUSE**
15  **California; ERNESTO SANTACRUZ JR.,**         **WITHIN THREE DAYS; COMPLAINT FOR**
    **Acting Field Office Director, Los Angeles**  **DECLARATORY AND INJUNCTIVE**
16  **Office of Detention and Removal, U.S.**      **RELIEF**
    **Immigration and Customs Enforcement;**
17  **TODD M. LYONS, Acting Director,**
    **Immigration and Customs Enforcement, U.S.**
18  **Department of Homeland Security; KRISTI**
    **NOEM, in her Official Capacity, Secretary,**
19  **U.S. Department of Homeland Security; PAM**
    **BONDI, in her Official Capacity, Attorney**
20  **General of the United States,**

21

22                          *Respondents.*

23

24

25

26

27

28

SITHY YI, A# 025-255-126

# I.    **INTRODUCTION**

1. This habeas petition challenges the arbitrary, punitive, and unlawful re-detention of a long-term resident of the United States who is a survivor of genocide, a victim of severe domestic violence, a cooperating crime victim with a long-pending U-visa petition, and a recipient of protection under the United Nations Convention Against Torture ("CAT").  For more than a decade, the Department of Homeland Security ("DHS") repeatedly determined that detention was unnecessary to effectuate Petitioner's removal and allowed her to live in the community under supervision.  She complied with every condition imposed on her liberty.  She appeared at every ICE check-in.  She never absconded.  She never violated supervision.

2. We ask the Court to grant his habeas petition or issue an order to show cause affording three (3) days for Answer as to why this Petition should not be granted.

3. Petitioner was previously released from immigration custody in 2013.  However, she has remained 'detained' for the purposes of Immigration and Nationality Act ("INA") § 241(a) detention for 13 years.  No efforts to secure her removal were made during those years and none were made prior to her recent unlawful re-arrest.

4. Nevertheless, on January 8, 2026, Immigration and Customs Enforcement ("ICE") abruptly detained Petitioner at her scheduled ICE check-in in Santa Ana, California, without notice, without a hearing, without any allegation of noncompliance, and without identifying any changed circumstances.  ICE leadership later asserted that detention was required solely because Petitioner has a final order of removal and because ICE intends at some undefined point to pursue removal to a third country despite Petitioner's protection under CAT.  None of these rationales authorize detention under the INA or the Constitution.

5. Civil immigration detention is permissible only when it bears a reasonable relationship to a legitimate, non-punitive governmental purpose.  Detention that is untethered from removal and

PETITION FOR WRIT OF HABEAS CORPUSAND ORDER TO SHOW CAUSE WITHIN THREE DAYS; COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 2

SITHY YI, A# 025-255-126

imposed in the absence of flight risk, danger, or imminent deportation is punitive in effect and unconstitutional.  Here, removal is not significantly likely in the reasonably foreseeable future.  ICE has not identified any third country willing to accept Petitioner, has not produced travel documents, and has not demonstrated that removal is imminent.  ICE had years (over a decade) to pursue removal while Petitioner lived under supervision and failed to do so.

6.  Because Respondents lacked lawful authority to detain Petitioner at the moment of her re-arrest, and because continued detention serves no legitimate regulatory purpose, this Court should grant the writ and order Petitioner's immediate release.


## II.    STATEMENT OF THE CASE

7.  Petitioner Sithy Yi is a national of Cambodia who entered the United States as a refugee in or around 1981 after surviving the Khmer Rouge genocide.  As a child, Petitioner was imprisoned, subjected to forced labor, starvation, torture, and extreme violence, and narrowly escaped death.  These experiences caused profound and lasting psychological harm.  Petitioner suffers from chronic post-traumatic stress disorder, depression, cognitive impairments, and has a long history of a seizure disorder that manifests during acute stress.

8.  Petitioner became a lawful permanent resident shortly after her arrival in the United States.  In 2016, an Immigration Judge ordered her removed but granted withholding of removal pursuant to the CAT, expressly finding that Petitioner would more likely than not be tortured if returned to Cambodia and that her criminal conviction did not constitute a particularly serious crime.  As a result of that grant of CAT protection, Petitioner cannot lawfully be removed to her country of nationality.

9.  The criminal basis for Petitioner's removal proceedings was a California state felony conviction under California Health and Safety Code § 11378 for possession of a controlled substance for

SITHY YI, A# 025-255-126

sale, for which she was convicted on June 30, 2011.  The conduct underlying the conviction occurred during a period marked by severe domestic violence, coercion, and untreated mental illness stemming from childhood torture and prolonged abuse.  Since completing her sentence, Petitioner has not incurred any new criminal convictions and has lived peaceably in the community for many years.

10. After Petitioner later violated the terms of her probation, she served approximately one year in California state prison.  The probation violation did not involve new criminal conduct.  Rather, it resulted from her inability to appear for a probation appointment during a period in which she was suffering serious physical injuries and acute psychological trauma caused by ongoing domestic violence.  These circumstances substantially impaired her ability to comply with probation conditions and were later documented in immigration proceedings.

11. In or about 2013, upon completion of her criminal sentence, Petitioner was transferred into ICE custody.  ICE detained Petitioner for less than one week.  With full knowledge of her criminal history, ICE affirmatively determined that continued detention was unnecessary and released her to her family under electronic ankle-monitor supervision.  That monitoring lasted approximately one week, after which ICE concluded that electronic monitoring was no longer required.

12. From that point forward, Petitioner lived continuously in the community for more than a decade. She complied with all ICE reporting requirements, never absconded, and remained under government supervision without incident.  ICE never alleged during this period that Petitioner posed a danger to the community or a flight risk.  The government's own repeated decisions to release Petitioner demonstrate that detention was not necessary to ensure her presence for any immigration purpose.

13. Petitioner has extensive family ties in the United States.  Her spouse is a United States citizen, as are her elderly mother and two sisters.  Petitioner is the mother of six children and the

SITHY YI, A# 025-255-126

grandmother of eight grandchildren, all of whom were born in the United States and reside here.

Prior to her re-detention on January 8, 2026, Petitioner lived with her spouse and was employed

as an Uber driver.

14. Petitioner maintains exceptionally close and enduring relationships with her mother, sisters,

children, and grandchildren.  During the Khmer Rouge period, Petitioner played a critical role in

helping her mother and two sisters escape to freedom, a shared experience that continues to bind

the family closely to this day.

15. On April 7, 2022, Petitioner filed a U-visa petition as a victim of domestic violence, supported by

a law-enforcement certification confirming her cooperation with police.  USCIS has not issued a

bona fide determination on that petition despite the passage of nearly four years.  Had such a

determination been issued, Petitioner would have been conferred deferred action and would, in all

likelihood, not have been subject to detention.

16. On November 18, 2025, Petitioner appeared for a scheduled ICE check-in accompanied by

undersigned counsel.  ICE again elected not to detain her.  Instead, ICE instructed Petitioner to

report to the Intensive Supervision Appearance Program ("ISAP") office to obtain an ankle

monitor.  Petitioner complied with these instructions, and ICE installed her ankle monitor on or

around December 1, 2025.  Petitioner remained fully compliant under electronic monitoring.

17. Nothing about Petitioner's circumstances changed after November 18, 2025.  She did not violate

supervision, miss appointments, or engage in any conduct suggesting danger or flight risk.

18. Nevertheless, on January 8, 2026, Petitioner appeared for her next ICE check-in, this time without

counsel, and was immediately detained without prior notice, without a hearing, and without any

allegation of noncompliance or changed circumstances.  She was transferred to the Adelanto ICE

Processing Center, where she remains detained as of the filing of this petition.

SITHY YI, A# 025-255-126

19. Shortly after the detention, undersigned counsel spoke directly with Assistant Field Office Director Jennifer Herrera and urgently requested Petitioner's release under the same supervision conditions ICE had imposed weeks earlier, explaining the grave humanitarian concerns presented by Petitioner's extensive trauma history, medical fragility, and deep family ties.  Ms. Herrera stated that ICE "had to" detain Petitioner because she has a final order of removal, does not have a bona fide determination letter from USCIS for her U-visa petition, and because ICE will not deport her to Cambodia due to CAT protection but intends to seek removal to a third country. ICE did not identify any third country willing to accept Petitioner and did not assert that removal was imminent.

## III.    CUSTODY

20. Petitioner is in the physical and legal custody of Respondents and is detained at the Adelanto ICE Processing Center in Adelanto, California.

## IV.    PARTIES

21. Petitioner Sithy Yi is a citizen of Cambodia who entered the United States as a refugee in or around 1981 and has resided in the United States for more than four decades.  She is a survivor of the Cambodian genocide, a victim of domestic violence, a cooperating witness with a pending U-visa petition, and a recipient of withholding of removal under the Convention Against Torture. She is currently detained by ICE at the Adelanto ICE Processing Center.

22. Respondent Fereti Semaia is the Facility Administrator of the Adelanto ICE Processing Center and is Petitioner's immediate custodian.  He is named in his official capacity.

SITHY YI, A# 025-255-126

23. Respondent Ernesto Santacruz Jr. is the Acting Field Office Director of the Los Angeles Office of

Detention and Removal Operations for ICE.  He is responsible for custody and detention

decisions within the Los Angeles Area of Responsibility and is named in his official capacity.

24. Respondent Todd M. Lyons is the Acting Director of U.S. Immigration and Customs

Enforcement, a component of the U.S. Department of Homeland Security, and is responsible for

the administration and enforcement of the immigration detention and removal system nationwide.

He is sued in his official capacity.

25. Respondent Kristi Noem is the Secretary of the U.S. Department of Homeland Security and is

responsible for the administration and enforcement of the immigration laws of the United States,

including the custody and detention of noncitizens. She is sued in her official capacity.

26. Respondent Pam Bondi is the Attorney General of the United States and is named in her official

capacity.


## V.    JURISDICTION AND VENUE

27. This action arises under the United States Constitution and INA, 8 U.S.C. § 1101 et seq., to

challenge Petitioner Sithy Yi's detention under the INA and any inherent or plenary powers the

government may claim to justify her continued incarceration.

28. This Court has jurisdiction under 28 U.S.C. § 2241, U.S. Const. art. I, § 9, cl. 2, and 28 U.S.C. §

1331 because Petitioner is in the custody of Respondents under color of authority of the United

States, and that custody violates the Constitution, laws, or treaties of the United States.  This

Court's jurisdiction is not limited by Petitioner's nationality, immigration status, or any other

classification.  See *Boumediene v. Bush*, 553 U.S. 723, 747 (2008).

29. This Court may grant relief pursuant to U.S. Const. art. I, § 9, cl. 2, U.S. Const. amend. V, 28

U.S.C. § 2241, 28 U.S.C. § 1361, and 28 U.S.C. § 1651.

SITHY YI, A# 025-255-126

30. Specifically, this Court has jurisdiction under 28 U.S.C. § 2241 to review Petitioner's detention. Federal district courts possess broad authority to issue writs of habeas corpus when a person is held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). That authority extends to challenges to immigration detention and survives the jurisdictional limitations imposed by the REAL ID Act.

31. Because Petitioner seeks the traditional habeas remedy of release from allegedly unlawful detention, rather than review of the validity of her underlying removal order, this petition presents precisely the type of threshold legality-of-detention claim that § 2241 was designed to address. *See INS v. St. Cyr*, 533 U.S. 289, 301 (2001); *see also Lopez-Marroquin v. Barr*, 955 F.3d 759, 762 (9th Cir. 2020) (*citing Singh v. Holder*, 638 F.3d 1196, 1211–12 (9th Cir. 2011)). No court has previously ruled on the legality of Petitioner's current detention.

32. Venue is proper in this District under 28 U.S.C. §§ 1391(b)(2) and 1391(e)(1) because a substantial part of the events or omissions giving rise to this action occurred within this District, Petitioner Sithy Yi is detained within this District, and her custodian resides within this District. Venue is also proper under 28 U.S.C. § 2243 because Petitioner's immediate custodian resides in this District. *See Rumsfeld v. Padilla*, 542 U.S. 426, 451–52 (2004) (Kennedy, J., concurring).

## VI.     STATUTORY FRAMEWORK

33. Section 1231(a) of Title 8 governs the detention of individuals whom immigration courts have ordered removed. The statute mandates that ICE detain such individuals during the ninety-day removal period while it attempts to execute the removal order. *See* 8 U.S.C. § 1231(a)(2).

34. The ninety-day removal period begins when the removal order becomes administratively final. *See* 8 U.S.C. § 1231(a)(1)(B). Absent an applicable exception, if ICE cannot complete removal

SITHY YI, A# 025-255-126

within the ninety-day period, it must release the individual under conditions of supervision. *See* 8
U.S.C. § 1231(a)(3).

35. Subsection 1231(a)(6) authorizes ICE to extend detention beyond the ninety-day removal period
for certain categories of noncitizens.

36. That authority, however, is not unlimited. In *Zadvydas v. Davis*, the Supreme Court held that §
1231(a)(6) does not permit indefinite detention and must be construed to authorize detention only
for a period "reasonably necessary" to effectuate removal. <u>533 U.S. 678, 689</u> (2001). Where
removal is not reasonably foreseeable, continued detention exceeds statutory authority. *Id*. at
701.

37. DHS regulations implementing § 1231(a) permit ICE to release a noncitizen after the ninety-day
removal period if the agency determines that the individual "would not pose a danger to the
public or a risk of flight," without regard to whether removal is likely in the reasonably
foreseeable future. <u>8 C.F.R. § 241.13(b)(1)</u>. Release under these provisions reflects an
individualized determination that continued detention is not necessary to serve the purposes of the
statute.

38. Once release has been granted, ICE may withdraw or revoke that release only in limited
circumstances. ICE may withdraw release if it determines that removal can be effectuated "in the
reasonably foreseeable future" or if the noncitizen violates the conditions of release. 8 C.F.R. §
241.13(h)(4). Even then, ICE may revoke release only when "there is a significant likelihood that
the [noncitizen] may be removed in the reasonably foreseeable future." *Id*. § 241.13(i)(2). Upon
revocation, ICE must provide the noncitizen with notice of the reasons for the revocation. *Id*. §
241.13(i)(3).

39. In addition, agency action taken pursuant to § 1231(a) is subject to the requirements of the
Administrative Procedure Act. Under the APA, courts must "hold unlawful and set aside agency

SITHY YI, A# 025-255-126

action" that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  5 U.S.C. § 706(2)(A).  An agency must articulate a satisfactory explanation for its action, including a rational connection between the facts found and the choice made.  *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2569 (2019).

40. Immigration detention is civil, not punitive, and may not be used as a mechanism of punishment. Detention is permissible only when, based on an individualized determination, it serves a legitimate regulatory purpose, namely, preventing flight or protecting the community. *See Zadvydas*, 533 U.S. at 690.  Where detention does not further those purposes, it violates both statutory limits and constitutional due process.

41. "Freedom from imprisonment - from government custody, detention, or other forms of physical restraint - lies at the heart of the liberty that the Due Process Clause protects."  *Id.*  The Due Process Clause applies to all "persons" within the United States, including noncitizens, regardless of immigration status.  *Id.* at 693.

## VII.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

42. For habeas corpus claims, exhaustion of administrative remedies is prudential, not jurisdictional.  *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017).  A court may waive the prudential exhaustion requirement where "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void."  *Id*. (*quoting Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)).  Exhaustion should be waived here because administrative remedies are futile and Petitioner's continued detention causes irreparable harm.

43. Exhaustion is futile because this action arises from ICE's refusal to release Petitioner from post–final-order detention, and there is no administrative mechanism through which Petitioner can

SITHY YI, A# 025-255-126

obtain the relief she seeks.  An Immigration Judge lacks jurisdiction to redetermine custody under

8 U.S.C. § 1231(a), and ICE has already denied counsel's request for Petitioner's release.  Under

these circumstances, requiring Petitioner to pursue additional administrative steps would serve no

purpose.

44. Moreover, no statutory exhaustion requirement applies to Petitioner's claim that her detention

violates the Constitution.  Courts have repeatedly held that exhaustion is not required where, as

here, the agency lacks authority to adjudicate constitutional claims.  *See Am.-Arab Anti-*

*Discrimination Comm. v. Reno*, 70 F.3d 1045, 1058 (9th Cir. 1995) (exhaustion excused where it

would be a "futile exercise because the agency does not have jurisdiction to review"

constitutional claims); *In re Indefinite Detention Cases*, 82 F. Supp. 2d 1098, 1099 (C.D. Cal.

2000).

45. In addition, Petitioner's continued detention results in irreparable harm that cannot be remedied

through later relief.  Petitioner suffers from severe post-traumatic stress disorder, depression, and

a dormant seizure disorder that is triggered by acute stress.  Each day of continued detention

places her physical and mental health at heightened risk and inflicts harm that cannot be undone.

Courts have recognized that ongoing immigration detention causing psychological and medical

deterioration constitutes irreparable harm warranting waiver of exhaustion.  *See De Paz Sales v.*

*Barr*, No. 19-CV-07221-KAW, 2020 WL 353465, at *4 (N.D. Cal. Jan. 21, 2020).  Under these

circumstances, prudential exhaustion should be waived.

## VIII.    STANDARD OF REVIEW

46. A petition for a writ of habeas corpus under 28 U.S.C. § 2241 is the proper vehicle to challenge

the legality of immigration detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001)

(confirming that § 2241 habeas jurisdiction extends to challenges to post-final-order immigration

SITHY YI, A# 025-255-126

detention); *Nadarajah v. Gonzales*, <u>443 F.3d 1069, 1075</u> (9th Cir. 2006) (same).  Questions of

law, including statutory interpretation and constitutional claims, are reviewed de novo.

*See Hernandez v. Sessions*, <u>872 F.3d 976, 988</u> (9th Cir. 2017).  Where detention implicates

fundamental liberty interests, courts must conduct an independent and searching review to ensure

that detention is authorized by statute and comports with constitutional limits.  *See Zadvydas*, 533

U.S. at 690; *Demore v. Kim*, <u>538 U.S. 510, 523</u> (2003).


## IX.    <u>LEGAL ANALYSIS</u>

47. The Due Process Clause of the Fifth Amendment protects all persons within the United States,

including noncitizens, from arbitrary deprivation of liberty.  Freedom from physical detention lies

at the core of the liberty protected by the Constitution.  Immigration detention is civil rather than

criminal, and it is constitutionally permissible only when it bears a reasonable relationship to a

legitimate, non-punitive governmental purpose.  *Zadvydas v. Davis*, <u>533 U.S. 678, 690</u>–93

(2001).  When detention ceases to serve that purpose, it becomes punitive in effect and violates

due process.

48. Post-final-order detention is governed by <u>8 U.S.C. § 1231(a)</u>.  While detention is mandatory

during the ninety-day removal period, continued detention thereafter is discretionary and subject

to strict constitutional limits.  In *Zadvydas*, the Supreme Court held that § 1231(a)(6) authorizes

detention only for the period reasonably necessary to effectuate removal and does not permit

indefinite or potentially permanent detention.  <u>533 U.S. at 689</u>.  The Court identified six months

as a presumptively reasonable benchmark, after which continued custody is presumptively

unlawful unless the government demonstrates a significant likelihood of removal in the

reasonably foreseeable future.  *Id*. at 701.

SITHY YI, A# 025-255-126

49. Detention is lawful only so long as it remains tethered to the purpose of effectuating removal. Where detention bears no reasonable relationship to removal, because no concrete removal plan exists or removal is not realistically foreseeable, it exceeds statutory authority and violates due process, even if the duration of custody is brief.

50. The six-month benchmark cannot be evaded through serial release and re-detention. Courts evaluating detention under § 1231(a)(6) must assess reasonableness in context, including prior detention and prolonged periods during which the government had the ability to pursue removal but failed to do so. *See Zadvydas*, 533 U.S. at 690; *Clark v. Martinez*, 543 U.S. 371, 386–87 (2005); *Sied v. Nielsen*, No. 17-cv-06785-LB, 2018 WL 1876907, at *6 (N.D. Cal. Apr. 19, 2018).

51. The government's prolonged delay while Petitioner was at liberty weighs heavily against the lawfulness of renewed detention. The purpose of post-order detention is to facilitate removal, not to punish or incapacitate. *Zadvydas*, 533 U.S. at 690. Where the government had years to pursue removal under supervision but failed to do so, re-detention does not further the statute's purpose and instead raises the very constitutional concerns the Supreme Court sought to prevent. *See Clark*, 543 U.S. at 386.

52. The government also fails to meet its burden under *Zadvydas*. Continued detention is lawful only if DHS can show a "significant likelihood of removal in the reasonably foreseeable future," not mere speculation. 533 U.S. at 701. The Ninth Circuit has repeatedly held that detention is unlawful where DHS cannot identify a specific country willing to accept the noncitizen or provide concrete evidence that removal is imminent. *See Diouf v. Napolitano*, 634 F.3d 1081, 1086–87 (9th Cir. 2011); *Nadarajah v. Gonzales*, 443 F.3d 1069, 1078–79 (9th Cir. 2006).

53. ICE's own conduct confirms that detention has never been necessary to effectuate Petitioner's removal. In 2013, ICE detained her for less than a week before releasing her under electronic

SITHY YI, A# 025-255-126

monitoring, despite full knowledge of her criminal history.  For more than a decade thereafter, ICE allowed her to live in the community without incident.  On November 18, 2025, ICE again reviewed her case and elected not to detain her, instead placing her on ISAP monitoring.  Nothing changed between that date and January 8, 2026. Detention following years of successful supervision and in the absence of changed circumstances cannot be justified as regulatory and is punitive in effect.

54. The existence of a final order of removal does not itself authorize detention.  If it did, *Zadvydas* would have no meaning.  Both the statute and the Constitution require a showing that removal is significantly likely in the reasonably foreseeable future.  Respondents have not made that showing here.

55. Speculative third-country removal cannot satisfy the government's burden.  Removal to a third country requires that country's acceptance.  8 U.S.C. § 1231(b)(2).  Respondents have not identified any country willing to accept Petitioner, produced evidence of negotiations, or provided any timeline for removal.  A theoretical possibility of removal is not the same as a significant likelihood of removal in the reasonably foreseeable future.

56. Petitioner's CAT protection further defeats foreseeability.  CAT legally bars removal to Cambodia.  Legal barriers to removal must be considered under *Zadvydas*.  Where removal to the country of nationality is prohibited and no third country has agreed to accept the noncitizen, continued detention approaches the unconstitutional indefinite detention the Supreme Court forbade.

57. The government's reliance on the absence of a U-visa bona fide determination is also misplaced.  Agency inaction does not create detention authority.  Detaining a cooperating crime victim solely because USCIS has not yet acted punishes the applicant for government delay and frustrates the

SITHY YI, A# 025-255-126

congressional purpose of the U-visa statute, which was enacted to encourage victims to cooperate with law enforcement without fear of immigration consequences.

58. Independently, Petitioner's detention is unlawful because it constitutes a de facto revocation of supervision without compliance with mandatory regulatory procedures.  Under 8 C.F.R. §§ 241.4(l) and 241.13(i), ICE may revoke an Order of Supervision only for violations or materially changed circumstances and only after notice, an opportunity to respond, and an informal interview.  ICE alleged no violation, identified no changed circumstances, and provided no process.

59. Under the *Accardi* doctrine, agency action taken in violation of its own regulations designed to protect individual rights is invalid.  *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954).  Because the OSUP regulations protect a fundamental liberty interest, no showing of prejudice is required.

60. Petitioner's detention also violates procedural due process.  Under *Mathews v. Eldridge*, 424 U.S. 319 (1976), the private interest in freedom from detention is fundamental, the risk of error is extreme where ICE detains without notice or hearing, and the government's interest is minimal given its repeated determination that supervision suffices.

61. Substantively, detention that is untethered from any legitimate regulatory purpose violates due process.  When removal is not reasonably foreseeable, continued detention becomes unconstitutional.  *Zadvydas*, 533 U.S. at 690.

62. Respondents' actions are also arbitrary and capricious under the Administrative Procedure Act. ICE repeatedly determined that Petitioner could remain at liberty, induced reliance through supervision, and then reversed course without explanation, evidence, or changed circumstances.

63. Because Respondents lacked lawful authority to detain Petitioner at the moment of re-detention, remand would serve no purpose.  Continued custody would itself raise serious constitutional

SITHY YI, A# 025-255-126

concerns.  The only lawful remedy is immediate release under Petitioner's prior conditions of supervision or equivalent non-custodial conditions.

## X.    REQUIREMENTS OF 28 U.S.C. § 2243

64. Under 28 U.S.C. § 2243, the Court must grant the petition for a writ of habeas corpus or issue an order to show cause to Respondents "forthwith," unless it appears from the application that the petitioner is not entitled to relief.  28 U.S.C. § 2243.  If an order to show cause is issued, the statute further requires that the Court direct Respondents to file a return "within three days unless for good cause additional time, *not exceeding twenty days*, is allowed." *Id.* (emphasis added).

65. Courts have long recognized the central role of the habeas statute in protecting individuals from unlawful detention.  The Great Writ has been described as "perhaps the most important writ known to the constitutional law of England, affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis added).

66. Habeas corpus must remain a swift and effective remedy.  The Ninth Circuit has emphasized that "[t]he statute itself directs courts to give petitions for habeas corpus 'special, preferential consideration to insure expeditious hearing and determination.'" *Yong v. INS*, 208 F.3d 1116, 1120 (9th Cir. 2000) (internal citations omitted).  The Ninth Circuit further cautioned against any action that would create the perception "that courts are more concerned with efficient trial management than with the vindication of constitutional rights." *Id.*

SITHY YI, A# 025-255-126

# XI.     CLAIMS FOR RELIEF

## COUNT I: UNLAWFUL DETENTION IN VIOLATION OF
## 8 U.S.C. § 1231(a)(6) AND *ZADVYDAS v. DAVIS*

67. Petitioner realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

68. Petitioner is detained pursuant to a final order of removal and is therefore subject to the post-removal detention framework set forth in 8 U.S.C. § 1231(a).  Although detention is mandatory during the ninety-day removal period, detention beyond that period under § 1231(a)(6) is discretionary and constitutionally limited.

69. In *Zadvydas v. Davis*, the Supreme Court held that § 1231(a)(6) authorizes detention only for a period reasonably necessary to effectuate removal and does not permit indefinite or potentially permanent detention.  533 U.S. 678, 689–701 (2001).  Continued detention is lawful only if removal is significantly likely in the reasonably foreseeable future.  *Id.* at 701.

70. Respondents cannot meet that burden here.  Petitioner cannot be removed to Cambodia due to protection under CAT.  Respondents have not identified any third country willing to accept Petitioner, have not produced evidence of travel documents, and have not demonstrated that removal is imminent.  Statements of intent to pursue third-country removal are speculative and legally insufficient.  Some possibility of eventual removal is not the same as a significant likelihood of removal in the reasonably foreseeable future.

71. Because Respondents have failed to demonstrate a significant likelihood of removal in the reasonably foreseeable future, Petitioner's continued detention exceeds statutory authority and is unlawful under 8 U.S.C. § 1231(a)(6) and *Zadvydas*.

SITHY YI, A# 025-255-126

## COUNT II: VIOLATION OF THE FIFTH AMENDMENT
## DUE PROCESS CLAUSE  SUBSTANTIVE DUE PROCESS

72. Petitioner realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

73. The Fifth Amendment's Due Process Clause protects all persons within the United States, including noncitizens, from arbitrary deprivation of liberty.  Civil immigration detention is constitutionally permissible only when it bears a reasonable relationship to a legitimate, non-punitive governmental purpose, such as preventing flight or protecting the community. *Zadvydas*, 533 U.S. at 690–92.

74. Respondents' detention of Petitioner serves no legitimate regulatory purpose.  ICE has repeatedly determined, both in 2013 and again in November 2025, that Petitioner does not pose a danger and is not a flight risk and may remain at liberty under supervision.  Petitioner complied with all conditions of supervision for years, including ISAP monitoring imposed in late 2025.  Nothing materially changed between Petitioner's supervised release on November 18, 2025, and her re-detention on January 8, 2026.

75. Where detention follows years of successful supervision and occurs absent changed circumstances or imminent removal, it is punitive in effect and not reasonably related to effectuating removal.  Petitioner's detention therefore violates substantive due process.

## COUNT III: VIOLATION OF THE FIFTH AMENDMENT
## DUE PROCESS CLAUSE — PROCEDURAL DUE PROCESS

76. Petitioner realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

77. Procedural due process requires, at minimum, notice and a meaningful opportunity to be heard before the government deprives an individual of liberty.  *Mathews v. Eldridge*, 424 U.S. 319 (1976).

SITHY YI, A# 025-255-126

78. Petitioner's interest in freedom from physical detention is fundamental.  The risk of erroneous deprivation is extraordinarily high where ICE detains an individual without notice, without a hearing, and without making any individualized findings.  The government's interest in immediate detention is minimal where ICE has repeatedly determined that supervision suffices and where removal is not imminent.

79. Respondents detained Petitioner without prior notice, without identifying any violation or materially changed circumstance, and without providing any opportunity to contest the deprivation of liberty.  This failure to provide even minimal procedural safeguards violates the Fifth Amendment.

## COUNT IV: UNLAWFUL REVOCATION OF ORDER OF SUPERVISION AND ISAP RELEASE IN VIOLATION OF DHS REGULATIONS

80. Petitioner realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

81. Petitioner's re-detention constitutes a de facto revocation of her Order of Supervision and ISAP release.  DHS regulations strictly limit when and how ICE may revoke release.  Under 8 C.F.R. §§ 241.4(l) and 241.13(i), ICE may revoke supervision only upon a violation of release conditions or materially changed circumstances and only after providing notice, an opportunity to respond, and an informal interview.

82. Respondents did not allege that Petitioner violated any condition of supervision, did not identify any materially changed circumstances, and did not provide notice, conduct an interview, or issue a revocation determination prior to detaining Petitioner.

83. Because these regulations protect a fundamental liberty interest, Respondents' failure to comply renders Petitioner's detention unlawful.

SITHY YI, A# 025-255-126

## COUNT V: VIOLATION OF THE *ACCARDI* DOCTRINE

84. Petitioner realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

85. Under the *Accardi* doctrine, agency action taken in violation of binding regulations designed to protect individual rights is invalid.  *United States ex rel. Accardi v. Shaughnessy*, <u>347 U.S. 260</u>, 268 (1954).  Where such regulations protect liberty interests, no showing of prejudice is required.

86. The regulations governing revocation of supervision are mandatory and designed to protect noncitizens from arbitrary detention.  Respondents violated these binding regulations by detaining Petitioner without complying with required procedures.  As a result, Petitioner's detention is unlawful and must be set aside.

## COUNT VI: ARBITRARY AND CAPRICIOUS AGENCY ACTION IN VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT

87. Petitioner realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

88. The Administrative Procedure Act prohibits agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  <u>5 U.S.C. § 706(2)(A)</u>.  An agency acts arbitrarily when it reverses a settled position without reasoned explanation, ignores reliance interests created by its own conduct, or fails to articulate a rational connection between the facts found and the decision made.

89. Respondents repeatedly determined that Petitioner could safely remain at liberty, instructed her to obtain an ankle monitor, and induced her reliance on continued supervision.  Respondents then abruptly reversed course and detained her without explanation, evidence, or changed circumstances.

90. This unexplained reversal affecting a fundamental liberty interest is arbitrary and capricious and must be set aside.

SITHY YI, A# 025-255-126

## XII.    **PRAYER FOR RELIEF**

WHEREFORE, Petitioner respectfully requests that this Court:

1) Assume jurisdiction over this action pursuant to 28 U.S.C. § 2241;

2) Issue a writ of habeas corpus declaring that Petitioner's detention is unlawful under the Constitution and laws of the United States;

3) Order Petitioner's immediate release from ICE custody, under her prior Order of Supervision, ISAP conditions, or other reasonable non-custodial conditions deemed appropriate by the Court;

4) In the alternative, order a prompt, individualized custody hearing that complies with the Fifth Amendment, at which the government bears the burden of proving that continued detention is lawful and justified;

5) Enjoin Respondents from re-detaining Petitioner absent a material change in circumstances and full compliance with governing statutes, regulations, and due process requirements;

6) Prohibit Respondents from transferring Petitioner out of the jurisdiction of this Court without prior Court approval;

7) Declare Respondents' actions unlawful under 8 U.S.C. § 1231(a)(6), the Fifth Amendment to the United States Constitution, DHS regulations, and the Administrative Procedure Act;

8) Award Petitioner her costs and reasonable attorneys' fees as authorized by law; and

9) Grant such other and further relief as the Court deems just and proper.

SITHY YI, A# 025-255-126

1    January 14, 2026               Respectfully Submitted,

2

3

4

5                             _____

                            KIM H. LUU-NG, CA SBN 247356

6                             REEVES IMMIGRATION LAW GROUP

                            2 N. Lake Avenue, Suite 950

7                             Pasadena, CA 91101

                            TEL: (626) 795-6777

8                             kluung@reevesimmigration.com

9

10                             /s/Ben Loveman

                            _____

11                             BEN LOVEMAN, CA SBN 249970

                            REEVES IMMIGRATION LAW GROUP

12                             425 California Street, Suite 1250

                            San Francisco, Ca 94104

13                             TEL: (415) 960-5182

                            bloveman@reevesimmigration.com

14

15                             Attorneys for Petitioner

16

17

18

19

20

21

22

23

24

25

26

27

28

SITHY YI, A# 025-255-126

1

## 28 U.S.C. § 2242 VERIFICATION STATEMENT

I am submitting this verification on behalf of the Petitioner because I am the Petitioner's attorney. On the basis of documents, discussion with Petitioner and Petitioner's family, I hereby verify that the factual statements made in the attached Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge subject to penalty of perjury.

_____

KIM H. LUU-NG, CA SBN 247356
REEVES IMMIGRATION LAW GROUP
2 N. Lake Avenue, Suite 950
Pasadena, CA 91101
Tel: (626) 795-6777
kluung@reevesimmigration.com