UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SITHY YI,<br><br>    Petitioner,<br><br>    v.<br><br>FERETI SEMAIA, *et al.*,<br><br>    Respondents. | Case No. 5:26-cv-00165-CV (SSCx)<br><br>**ORDER GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER**<br>**[6]** |

    On January 8, 2026, U.S. Immigration and Customs Enforcement ("ICE") officers detained Petitioner Sithy Yi ("Petitioner") during a routine check-in. Petitioner has since remained in detention. Presently before the Court is Petitioner's request for a temporary restraining order ("TRO").

    On January 14, 2026, Petitioner filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 against Respondents Fereti Semaia, Facility Administrator of the Adelanto ICE Processing Center, Ernesto Santacruz, Jr., Acting Field Office Director of ICE's Los Angeles Office of Detention and Removal, Todd M. Lyons, Acting Director of ICE, Kristi Noem, Secretary of the U.S. Department of Homeland Security, and Pam Bondi, Attorney General of the United States (collectively, "Respondents") ("Petition"). Doc. # 1 ("Pet.").

On February 23, 2026, Petitioner filed a Motion for Temporary Restraining Order ("Motion"). Doc. # 6 ("Mot."). Specifically, Petitioner seeks a TRO that (1) orders Petitioner immediately released from unlawful detention pursuant to her prior Order of Supervision and Intensive Supervision Appearance Program ("ISAP") conditions, and (2) enjoins Respondents from transferring or removing Petitioner to Cambodia or any third country without notice and an opportunity to be heard before a neutral arbiter. *Id.* at 28. Respondent did not file an opposition by the February 26, 2026 deadline. *See* Doc. # 7, Order.

The Court finds that oral argument is not necessary to resolve the present dispute. *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15; *Willis v. Pac. Mar. Ass'n*, 244 F.3d 675, 684 n.2 (9th Cir. 2001). Having reviewed and considered the parties' briefing, the Court **GRANTS** the Motion.

## I.   BACKGROUND

Petitioner was born in Cambodia and entered the United States in 1981 as a refugee after surviving the Khmer Rouge genocide. Doc. # 6-1, Ex. B ("Li Decl.") ¶¶ 2, 4. As a child, Petitioner was imprisoned and subjected to forced labor, starvation, torture, and extreme violence. *Id.* ¶ 2. As a result of these experiences, Petitioner has suffered profound and lasting psychological harm, including post-traumatic stress disorder, depression, and cognitive impairments. *Id.* ¶ 3. She also has a long history of a seizure disorder that manifests during periods of acute stress. *Id.* Petitioner became a lawful permanent resident shortly after her arrival in the United States. *Id.* ¶ 4.

Petitioner has extensive family ties in the United States. *See id.* ¶¶ 12–13. Her spouse, mother, and two sisters are United States citizens. *Id.* ¶ 13. Petitioner played a critical role in helping her mother and sisters escape Cambodia during the Khmer Rouge period, which bonds the family closely to this day. *Id.* Petitioner also has six children and eight grandchildren, all of whom were born and reside in the United States. *Id.*

On June 30, 2011, Petitioner was convicted under California Health and Safety Code ¶ 11378 for possession of a controlled substance for sale. Pet. ¶ 9. The conduct underlying

the conviction occurred during a period marked by severe domestic violence, coercion, and untreated mental illness stemming from Petitioner's childhood torture and prolonged abuse. *Id.* Petitioner was sentenced to probation, but she violated the terms of her probation when she failed to appear for a probation appointment. *Id.* As a result of the violation, Petitioner ended up serving one year in a California state prison. *Id.*

In or about 2013, after completing her criminal sentence, Petitioner was transferred into ICE custody and placed in removal proceedings. Li Decl. ¶¶ 5, 9. After less than one week in detention, ICE determined that continued detention was unnecessary and released Petitioner with an ankle monitor. *Id.* ¶ 9. Petitioner wore the ankle monitor for approximately one week, at which point it was removed after ICE determined monitoring was no longer necessary. *Id.*

In 2016, an immigration judge ordered Petitioner removed but withheld her removal pursuant to the Convention Against Torture ("CAT"), finding that she would more likely than not be tortured if returned to Cambodia. Doc. 6-1, Ex. C, Order of the Immigration Judge. Petitioner has since continued to live in the United States under an Order of Supervision requiring her to attend regular immigration check-ins. Li Decl. ¶ 10. Petitioner has not violated any of the conditions of her supervised release, nor has she committed any additional crimes since her conviction. *Id.*

On April 7, 2022, Petitioner filed a U-visa petition as a victim of domestic violence, supported by a law-enforcement certification confirming her cooperation with police. *Id.* ¶ 14. Her U-visa petition has remained pending with U.S. Citizenship and Immigration Services for nearly four years. *Id.*

On November 18, 2025, Petitioner appeared for a scheduled check-in with ICE. *Id.* ¶ 15. ICE elected not to detain her, but instructed her to report to the ISAP office to obtain an ankle monitor. *Id.* Petitioner complied with these instructions, and ICE installed the ankle monitor on or around December 1, 2025. *Id.* ¶ 16.

On January 8, 2026, Petitioner appeared for her next check-in and was immediately detained without notice or an opportunity to respond. *Id.* ¶¶ 19–20. Nothing in the record

indicates that Petitioner's circumstances changed between her November 18, 2025 and January 8, 2026 check-ins, as she did not miss any appointments, violate her conditions of release, or engage in any conduct suggesting she posed a danger or a flight risk. *Id.* ¶ 18.

Shortly after her detention, Petitioner's counsel spoke with Assistant Field Office Director Jennifer Herrera to request Petitioner's release. Doc. 6-1, Ex. E ("Luu-Ng Decl.") ¶¶ 16–17. Ms. Herrera responded that ICE detained Petitioner because she has a final removal order and does not have a bona fide determination letter from USCIS for her U-visa petition. *Id.* ¶ 18. Ms. Herrera also stated that ICE will not deport Petitioner to Cambodia due to the CAT protection but intends to seek her removal to a third county. ICE did not identify any third country willing to accept Petitioner. *Id.* ¶ 19.

## II.   LEGAL STANDARD

The standards for issuing a TRO and preliminary injunction under Federal Rule of Civil Procedure 65 are the same. *Six v. Newsom*, 462 F. Supp. 3d 1060, 1067 (C.D. Cal. 2020); *see also Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that a TRO and preliminary injunction involve "substantially identical" analysis). Like a preliminary injunction, a TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

Under *Winter*, a plaintiff seeking a TRO must establish four elements: (1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm absent preliminary relief, (3) that the balance of equities tip in its favor, and (4) that the public interest favors an injunction. *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1071 (9th Cir. 2014) (citing *Winter*, 555 U.S. at 20). Courts in this circuit also employ "an alternative 'serious questions' standard, also known as the 'sliding scale' variant of the *Winter* standard," *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021), in which the *Winter* elements are "balanced, so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this approach, a TRO may be

warranted where there are "'serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff," so long as the other *Winter* elements are also met. *Id.* at 1132.

### III. DISCUSSION

Petitioner argues she is entitled to immediate release from custody because Respondents cannot establish that their revocation of her release was authorized under 8 C.F.R. § 241.13(i) or 8 C.F.R. § 241.4(l), such as through a showing of changed circumstances that render her removal likely in the reasonably foreseeable future. Mot. at 15–17. Petitioner also argues that Respondents did not comply with the procedural requirements of Sections 241.13(i) or 8 C.F.R. § 241.4(l), namely, that they must provide Petitioner with (1) notice of the reasons for the revocation of her release, and (2) an informal interview to afford her an opportunity to respond to the reasons for revocation. *Id.* at 17–18. Finally, Petitioner argues that Respondents should be enjoined from removing her to a third country absent notice and an opportunity to be heard before a neutral arbiter. *Id.* ¶ 18–21.

Because Respondents have not opposed the Motion, and because this Court has previously found that a TRO is warranted under similar circumstances (*see, e.g.*, *Hakim v. Noem*, No. 5:26-cv-00145-CV (DTB) (C.D. Cal. Jan. 22, 2026) (Doc. # 11)), the Court finds that the issuance of a TRO is proper. Specifically, the Court will grant Petitioner's request that she be immediately released, enjoin Respondents from removing Petitioner to a third country absent notice and an opportunity to be heard before a neutral arbiter, and order Respondents not to transfer Petitioner outside of the Central District of California during the pendency of the proceedings.

Furthermore, the security bond requirement of Federal Rule of Civil Procedure 65(c) is waived. The Court has "discretion as to the amount of security required, if any," and it "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003).

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Petitioner's Motion and **ORDERS** as follows:

1. Respondents are **ORDERED** to immediately release Petitioner from custody, subject to the conditions of his prior order of supervision, and are enjoined from re-detaining Petitioner without compliance with 8 U.S.C. § 241.4(l) and 8 U.S.C. § 241.13(i).

2. Respondents are **ENJOINED** from removing Petitioner to a third country absent notice and an opportunity to be heard before a neutral arbiter.

3. To preserve the Court's jurisdiction, Respondents are **ENJOINED** from transferring, relocating, or removing Petitioner outside of the Central District of California pending final resolution of this case or further order of the Court, unless executing a final order of removal issued against Petitioner.

4. This temporary restraining order shall take immediate effect and expires at 5:00 p.m. PT on March 13, 2026. The temporary restraining order may be extended for good cause or upon Respondents' consent.

5. Respondents are ordered to show cause why a preliminary injunction should not issue. *See* C.D. Cal. L. R. 65-1. Respondents must file any written response to the Order to Show Cause no later than March 6, 2026. Failure to file a response by this deadline shall be deemed as consent to the granting of a Preliminary Injunction. Petitioner shall file a reply no later than March 11, 2026.

6. The Court shall decide, after reviewing the parties' papers, whether to hold a hearing on the Order to Show Cause or to take the Order to Show Cause under submission.

**IT IS SO ORDERED**.

Dated: 2/27/26

*Cynthia Valenzuela*
HON. CYNTHIA VALENZUELA
UNITED STATES DISTRICT JUDGE